Good morning everyone and welcome to the Ninth Circuit. We'll hear the cases in the order of the day sheet. The first case is Jesse M. Skinner v. R. Lee at the United States Attorney's Office. Good morning, Your Honors. May it please the Court, Simon Zenn representing Mr. Jesse Skinner. With the Court's permission, I'd like to reserve two minutes for rebuttal and I can watch my own clock. Okay, thank you. The panel should vote to call this case en banc to reconsider this Court's erroneous decision in Chambers. ER 103 and 97 show that officers called Mr. Skinner a snitch, threatened him repeatedly, and actually carried out their threats by getting other inmates to viciously assault him using weapons. These intentional and unprovoked acts of violence easily stay Eighth Amendment excessive force claims and they are not meaningfully different from the prisoner mistreatment claim in Carlson. Chambers went out of its way and foreclosed all Eighth Amendment excessive force claims by misapplying the Abbasi factors. As a result, Chambers is now in direct conflict with Fields, Reed, and all of the other courts that have allowed these claims for decades. My question is, did he exhaust his grievance procedure remedies on the retaliation claim within the prison? I think he filed some grievances, but this argument and the counsel briefing only concerned the excessive force claims. My client has submitted a proposed briefing on his other claims, including his retaliation claims, I believe. But did he grieve all of the assaults that he alleges occurred? I think based on the complaint, he filed grievances on some of them and there was retaliation on others. So is your answer there might be some unexhausted claims? I guess the reason I'm asking the question is that the Supreme Court has told us that if we're going to consider an extension of the Bivens rule, we need to consider what other alternatives were available to the plaintiff besides extending a Bivens cause of action to this claim. I see. Some courts have considered these special factors. But in this court, Watanabe and other courts have held that alternative remedial programs are to be considered at Step 2. And we only get to Step 2 of the Bivens analysis if the court finds that there is a new Bivens context. And we argue that there is no new Bivens context, so we don't need to get to Step 2 in this case. But doesn't our decision in Chambers control the resolution of that first question? It does, which is why we are petitioning for this panel to vote to hear this case en banc to reconsider Chambers. To reconsider Chambers. So your real complaint is with Chambers. And the question is whether or not this is a good vehicle to revisit Chambers. That's right. And our view is that Chambers erred by misapplying the Abbasi factors. So what is this best argument that you have that we should recommend to our colleagues that Chambers be revisited en banc? The best argument is that Chambers misapplied the Abbasi factors at Step 1. There is no meaningful difference between Mr. Skinner's and Mr. Chambers' claims and the claims in Carlson. There is no meaningful difference in the constitutional right at issue because they both involve the Eighth Amendment's prohibition against cruel and unusual punishment. The legal standards also do not have a meaningful difference. Those who use force maliciously and statistically to cause harm satisfy deliberate indifference, which only requires knowledge and disregard of a risk to inmate safety. What if we were to decide that this is a different context? Then what will we do at the next step? Isn't that where you get to Judge Tallman's question about special factors? We're making no argument on Step 2, but there are good reasons why, even if this is a new context, that the claim should be extended. What are those? We make no argument as to Step 2. But don't we have to consider that before we extend? Yes, if this court finds that there is new context, it would have to consider that. And our argument is that there is no new context here. OK, but Chambers forecloses that argument, does it not, by saying it is a new context? Yes, Chambers currently forecloses that. OK. I guess the thing that concerns me about your position is that, I mean, Bivens has been around for a long time, and Congress has not seen fit to do what it did when it adopted Section 1983 to approve these types of claims against state officers. I mean, isn't this kind of the paradigmatic example of where the court should defer to Congress, the question of whether or not to create a remedy, which clearly has major financial ramifications to the federal government, based on what we see happening in the 1983 case? I don't think so. Because this is not a new Bivens context, and courts have continued to recognize Bivens claims in many different cases, including this court in Montenabe. Hasn't the Supreme Court told us that unless the claim is pretty much identical to the three it approves, that we may as well forget that there isn't going to be a new Bivens claim? The standard isn't whether the claims are identical. It's whether there is a meaningful difference. I agree. Why do you think there's not a meaningful difference? There's not a meaningful difference. Between a medical, basically a medical malpractice claim and this claim of cruel punishment. Your client claims that he was beaten. That's right. I wouldn't characterize it as malpractice. Both claims have the least- I'm just using a shorthand. You can characterize it as you want, inadequate medical care. Why is that not meaningfully different is what I'm trying to get at, counsel. It's not meaningfully different because the legal standards are not meaningfully different, as I explained. And also, the facts. Both claims involve prisoner mistreatment claims. Officers whose overconduct harmed the health of an inmate. In Carlson, you had prison officers using a respirator known to be defective and using contraindicated drugs that made the plaintiff's condition worse. That's why I characterize it, shorthand, as malpractice. Right? It's inadequate medical care. Right? Yes. So I didn't mean to interrupt you, but that's why I'm putting that in that basket. And this seems to me a very different context. I didn't mean to interrupt you. You're telling me why you think it's not a different context. Yes, but Carlson never actually described the plaintiff's claims as deliberate indifference claims, and it never limited the claims. It never limited. It's holding to medical needs claims, much less claims specific to that, and it never foreclosed claims based on excessive force. Well, whether it did or not, we now know that the Supreme Court has. That's what Judge Akut is calling your attention to. Right? We now know that the Supreme Court has said we really have to look at if there is any reason. Right? And at step one, we're looking at the different context. And you've been clear that that's your. You're putting your eggs in that basket. So I'm trying to probe why it is you think those are not different, why the contexts are not different. And what you're telling me is you think that the legal standard doesn't differ as opposed to the context from which the claim arises. Yes, that's right. I see that. I have two minutes left, but I'll answer the question. So they are different, but they are not meaningfully different, and that's the standard under Abbasi. But what does meaningfully mean? I just cringe when I hear that word because I have yet to see a court tell me what the definition of meaningful difference is. And especially although Judge Christian says it's not identical, but I think the Supreme Court comes pretty close to saying it has to be on all fours. They said we're supposed to ask if there is any reason. It's pretty strong language. It's an officer at a different level of superiority. It doesn't have to be a meaningful difference. So that's pretty tough to argue against. Yes, but you only get there if you get to step two. At step one, the operative test under Abbasi, which still remains good law, is whether it's meaningfully different. And unfortunately, Judge Tallman, the Supreme Court has, I don't believe, provided specific guidance on that point. Believe me, I looked. I can't find an answer to that question. Do you want to save the rest of your time? Yes, thank you. Good morning, Your Honors. If it may please the Court, John Corvick on behalf of the United States, appearing as amicus in support of defendant's appellees. To begin, I want to focus on a couple points that were made by my colleague during his argument. First, he argues that there is no meaningful difference between the facts in Carlson and the facts here. However, he supports no case law in support of the theory that an excessive force claim presents the same context, certainly not after Egbert v. Boulay. One case that comes up in the appellant's brief on reply, Watanabe, I think, is somewhat instructive here in terms of how this court, post-Egbert, has examined what are meaningful differences. And in Watanabe, we see that, you know, while there was an argument made that Carlson is not limited to a medical deliberate indifference claim, we do see that this court, post-Egbert, does. And in Watanabe, at each of the various non-exhaustive factors that we see when determining whether or not something is a new context from Abassi, this court has emphasized the medical nature of those claims. So first, it noted that both were prison nurses. In our case here, there is no prison nurse that's involved, but rather line correction officers. Second, it said that the constitutional right at issue was, quote, the right under the Eighth Amendment to be free from cruel and unusual punishment through deliberate medical indifference, unquote. As to the third factor from Abassi, it said that both pointed to, quote, Again, focusing on the fact that it's a medical condition. Here, there is no claim as to deliberate medical indifference. For point four, looking at judicial guidance, it specifically focuses again on how the officers responded to serious medical conditions. And it focused again on how both were BOP medical staff. None of those facts that were found in Watanabe or found in Stannard, the two key cases where this court has allowed Bivens to continue parallel to Carlson, none of those facts are present here. So is it significant that we're dealing with a different constitutional amendment in a Bivens claim, which, as I understand it, is a Fourth Amendment excessive force claim? So, yes, it is relevant that there's a separate amendment, but I would say this. Carlson does have an Eighth Amendment claim, but as Your Honor points out, not an excessive force. So there's two different parts to that. The fact that Bivens came under the Fourth Amendment outside of the incarcerated context is a meaningful difference. That presents a new context from this to Bivens. So would a – had the plaintiff here alleged excessive force under the Fourth Amendment, would he have a legitimate Bivens claim against the correctional officers? No, Your Honor, for several reasons. First off, Eighth Amendment, because he's in an incarcerated context, would have been the appropriate method to challenge the excessive force. But beyond that, we still would have the same problems we have here versus Watanabe. We have a corrections officer versus a law enforcement officer outside. They operate under a different statutory scheme, the incarcerated context versus out of incarcerated context. The types of officers are different. The types of defendants are different. And I still believe that under the Supreme Court's more recent Egbert v. Boulay holding, we would have a new context. So we'd have a situation where these – there's no – outside of a grievance and perhaps a disciplinary proceeding, this does leave an inmate in a federal facility or who's looking at a federal defendant with really no recourse, it seems. There's a – which is, of course, troubling, so we certainly pause at that. If this prisoner who's complaining that the guards had slammed his fingers – and that was one of his complaints, right, that they slammed his fingers, I think, in the food tray, he would have no claim, I think, under the government's view for that tortious conduct for the battery. But he would have a claim if they took him to the infirmary or were slow getting him there or somehow didn't properly treat the injury. Is that right? Well, so I'd say two points. Certainly, when it comes to Bivens, there is a possibility – I mean, that's obviously a hypothetical. Depending on the facts, there could be a situation where Bivens might extend under this court's precedent now with wanton obviance to NARD. We would obviously have to see more facts to know. I figured out the answer to my question is yes, and I'm – I think you're pivoting away from it. Or let me say this. So if your Honor's – Would he have a claim for not treating the finger injury properly? Potentially. Would he have an administrative claim, I guess, is the question. So he would have – there's a number of different claims that are – that Mr. Skinner – someone in Mr. Skinner's context maybe could have, provided that they met their rule 8 obligation. When you say in his context, now you're going back to somebody who's complaining about being beaten in prison. Or even to your – If you could just hang on to that one. Are you referring to that person having many claims? I've mentioned one. Our hypothetical now being someone who's complained that he's been beaten by a guard in a federal prison. And what you're telling me, I think, is that he would have the administrative grievance process, which might result in a disciplinary action against the guard. Is that – So there's two points. Are there others? So, yes. So the Federal Tort Claims Act would provide a mechanism for a plaintiff in that circumstance to be able to get monetary damages to make themselves whole. But in terms of the focus of Bivens, Bivens is meant to disincentivize a federal official from violating someone's constitutional rights. And within this context, I think the most serious is an excessive force claim is something that can lead to criminal punishment to the officer. I'm trying to get you to answer a different question, but you don't seem to want to answer it. I fully appreciate the difference between the tort claim, and I appreciate that answer. But if he's not trying to mitigate his own injury in the form of money damages, but he wants to make sure he's going to be protected from this guard, is it not an avenue for him – and, of course, this is important for our post-Egbert analysis, right? Is it not an avenue for him to pursue a grievance that might result in a disciplinary procedure? Oh, yes. I apologize, Your Honor. I think I misunderstood the question initially. Well, I think it's going to be a trick question. No, yes. You could, of course. There's the administrative remedy program. He can file a grievance that would require the Office of Inspector General to investigate. Yes, absolutely. That's something that could be done. Okay. So that's a problem if we're going to be extending this to a new context. And opposing counsel hasn't argued otherwise. He's not getting to Step 2. Correct. But that's something we would take into account at Step 2. Yes, absolutely. Yes, absolutely, Your Honor. Apologies. So your position is his alternative remedies include grievances, a federal tort claims act, or the third one. I can't remember what it was. Was there a third one? So special factors that would count. If we got past Step 1, the special factors that we think would be most pertinent are Okay, wait. That's a different question. The question is we're trying to figure out, follow up on your question about the other avenues that are available. Yeah, that are available. And you mentioned the Federal Tort Claims Act, and Judge Tallman just asked you. Are there two avenues, or is there a third? There's the Federal Tort Claims Act. There's the administrative grievance process. And then there's, of course, criminal liability as well.  Criminal Civil Rights Act violation. Correct. Against the officers. Correct. Okay. Thank you. So another point that I want to address from opposing counsel's argument is he asserts that there is a conflict here with Fields and with Reed. First, with Fields, the one point that's on appeal here is that first step. And under the first step, Fields had assumed that there was, in fact, a new context. That case dealt with special factors after the fact. And that's something that we heard both in the opening brief as well as here in argument that that is not something that Mr. Skinner is arguing is pertinent here. They're putting all their chips in the new context basket. And Fields did not hold and, in fact, did not address whether or not this was a new context, assuming it was so because the plaintiff in that case had conceded it. As for Reed, while there is a difference between Reed and here, that unpublished decision is not current law of this circuit post Chambers. And Chambers is consistent with every circuit that has examined the issue. Every single circuit court that has examined whether Eighth Amendment excessive force claims present a new context have held the same as Chambers. And that includes this court again in Chambers afterwards in Hunt. Every single circuit court agrees on this issue. And with that – You've mentioned that a couple of times. Can I get you to shift gears and answer the question about whether you think these claims are all exhausted? So – Right. Is this claim exhausted is what I really – The excessive force claims – so we are not making an argument that he did not – that he did not attempt to exhaust Eighth Amendment excessive force claims. But regardless of whether or not he exhausted it, there is no cognizable Bivens claim under not only this court's holding in Chambers, but we believe that's correct under Egbert. To follow up on Judge Christin, you don't know the answer. You haven't addressed it. But is there an answer? The short answer is I don't know if – because it was not something that formed the basis. You have to recall we are appearing as amicus. The defendants in this case have not been served. And I want to be very cautious that I'm not going beyond what we've been asked to do as amicus because I do not want to preclude any arguments that an individual defendant might need to make should they be served. Why are you here as amici rather than representing the BOP officers? So the BOP officers were not served, and we do not want to get in a situation that our appearance is construed as a waiver of potential service arguments that they would have. And they also have not – and just to give a little bit more detail on how this would work, if an individual officer is sued under Bivens, there is a process that both they have to request our assistance. And the agency has to certify that. Exactly. And because they've not – I've not been given authorization by those individual defendants to represent them. I'm not in a position to be able to speak on their behalf or to potentially preclude arguments that they or their chosen counsel would make. All right. Okay. Thank you. You're over your time. Thank you very much for your arguments. We'll give you a minute for rebuttal. I'd like to reply to just two points that my friend on the other side made. The first is his characterization of the central issue in this appeal. There is a pending petition for initial hearing on Bonk before this panel. And we argue that there is a direct conflict between Chambers and Fields and all of the other cases that have permitted Eighth Amendment excessive force claims to go for decades that the government ignores. Opposing counsel says Fields assumed that it was a new context. Is that wrong? Do you disagree? That's right. But under the standard of Rule 40, en banc consideration is appropriate if there is a panel decision that conflicts with an authoritative decision from another U.S. court of appeals. And here, there is a direct conflict in the outcome. Chambers held that Bivens claims – these Bivens claims are not viable, and Fields held to the contrary. What year was Fields decided? 2024. Okay, you're over time. Please wrap up. The final thing I'll say is about the factors. Chambers misapplied each and every factor, a bossy factor, that it considered. And we believe that's a reason why this court should reconsider the case on Bonk. Thank you. Okay. In the case of Jesse Skinner v. Lee, it's submitted.
judges: TALLMAN, IKUTA, CHRISTEN